UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

Janet Gill,

                Plaintiff,      Case No. 14-cv-10406
                                   Hon. Judith E. Levy
v.                               Mag. Judge Mona K. Majzoub

Wandres Corp.,

                Defendant.

_____/

**OPINION AND ORDER GRANTING DEFENDANT'S [17]
MOTION FOR SUMMARY JUDGMENT**

Plaintiff Janet Gill bring this suit against her former employer, defendant Wandres Corp. ("Wandres"), for discrimination in violation of the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq.* ("ADA"). (Dkt. 1, Compl. ¶¶ 24-32.) Before the Court is Wandres' Motion for Summary Judgment. (Dkt. 17.) Gill was originally represented by counsel, but is now proceeding in this matter *pro se*. The Court referred this case to the Eastern District of Michigan's *pro bono* program administrator to attempt to find counsel for Gill, and stayed the case for 90 days. (Dkt. 25.) The administrator was unable to locate counsel for

Gill, despite multiple attempts to do so. (*See* Dkt. 26.) Pursuant to E.D. Mich. LR 7.1(f), the Court will decide the motion without oral argument. For the reasons discussed below, the Court will grant the motion.

**I.  Background**

Wandres was incorporated in Michigan in 1998, with its principal place of business in Ann Arbor, Michigan. Wandres manufactures cleaning systems that use brushes and compressed air to clean industrial machinery. Wandres is a subsidiary of Wandres GmbH, a German corporation located in Buchenbach, Germany. Gill was hired by Wandres in 2003 to do clerical work, although she performed a variety of jobs during her time at Wandres, including customer service and assembly of machines.

In 2010, Gill's physician placed her on certain restrictions because of tears in both of her rotator cuffs and because of a deteriorating spinal condition. Gill was restricted from lifting more than 10 pounds. In 2013, Gill's physician restricted her from lifting more than 15 pounds and from doing overhead work because of "severe spinal degeneration." (Dkt. 24, Ex. 1 at 3.)

2

Gill resigned her employment with Wandres on March 26, 2013. Gill alleges she did so because Justin Elsley, the Vice President and manager of Wandres, threatened to cut her hours and pay if she would not perform machine assembly tasks that violated her weight lifting restrictions. Gill's ADA claim is based on Wandres' alleged failure to accommodate her disabilities.

Wandres moved for summary judgment on the ground that it does not qualify as an employer under the ADA. (Dkt. 17.) Gill filed a response *pro se* and then, with the Court's leave, a supplemental response. (Dkt. 19, 24.)

**II. Analysis**

    **A. Standard**

Summary judgment must be granted where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Court may not grant summary judgment if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248. The Court "views

the evidence, all facts, and any inferences that may be drawn from the facts in the light most favorable to the nonmoving party." *Pure Tech Sys., Inc. v. Mt. Hawley Ins. Co.*, 95 F. App'x 132, 135 (6th Cir. 2004) (citing *Skousen v. Brighton High Sch.,* 305 F.3d 520, 526 (6th Cir.2002)).

The non-movant cannot, however, "rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact, but must present affirmative evidence" to defeat the motion. *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir. 1989). The "mere existence of a scintilla of evidence in support of the [non-movant's] position will be insufficient." *Liberty Lobby*, 477 U.S. at 252. "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Id.* at 249-250.

## B. Wandres' motion for summary judgment

Wandres maintains it is not covered by the ADA and is entitled to judgment for that reason.

A "covered entity" under the ADA is defined in relevant part as an "employer." 42 U.S.C. § 12111(2). "Employer" is defined in relevant part as "a person engaged in an industry affecting commerce who has

4

15 or more employees for each working day in each of 20 or more calendar weeks in the current or preceding calendar year." *Id.* § 12111(5)(A). Wandres submitted the affidavit of Justin Elsley, vice president of Wandres, as evidence that Wandres has always had fewer than 15 employees, and had 7 employees at the time Gill's employment with Wandres ended. (Dkt. 17-1, Ex. 1 to Def.'s Br., Elsley Aff. ¶¶ 7, 8.)

    1.    <u>Admissibility of Gill's evidence</u>

To avoid summary judgment, Gill must present evidence showing a genuine issue of material fact as to Wandres' employer status under the ADA. As an initial matter, Wandres contends that Gill's failure to oppose Wandres' motion with admissible evidence alone warrants summary judgment in Wandres' favor. (Dkt. 20, Def.'s Reply 3.)

Rule 56 does not require a party opposing summary judgment to "produce evidence in a form that would be admissible at trial to avoid summary judgment." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). "Otherwise, affidavits themselves, albeit made on personal knowledge of the affiant, may not suffice, since they are out-of-court statements and might not be admissible at trial." *Alexander v. CareSource*, 576 F.3d 551, 558 (6th Cir. 2009). But the party opposing summary

5

judgment must nonetheless "show that she *can* make good on the promise of the pleadings by laying out enough evidence that *will be* admissible at trial to demonstrate that a genuine issue on a material fact exists, and that a trial is necessary." *Id.*

Affidavits or declarations are among the record materials that may support a party's opposition to summary judgment. Fed. R. Civ. P. 56(c)(1)(A). Rule 56(c) requires that "[a]n affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4). Additionally, to be considered on a summary judgment motion, an affidavit or declaration must either be sworn or be dated, signed, and declared to be true and correct "under penalty of perjury." *Sfakianos v. Shelby Cty. Govt.*, 481 F. App'x 244, 245 (6th Cir. 2012); 28 U.S.C. § 1746(2) (authorizing unsworn declarations dated, signed, and expressly made under penalty of perjury to support any matter requiring, under United States law, a sworn declaration or affidavit).

Gill's written statements regarding the relationship between Wandres and Wandres GmbH are not sworn, nor are they signed. (*See* Dkt. 19, 24.) Gill writes that her statements are "truthful," but does not indicate that the statements were made under penalty of perjury. (Dkt. 24 at 6.) Nowhere does she affirm that her statements are based on personal knowledge, as required by Rule 56(c)(1)(A). Although not obligated to do so, the Court had previously informed Gill of the requirements of Rule 56, and specifically of the requirements for affidavits submitted in opposition to a summary judgment motion. (Dkt. 21.) The Court also gave Gill the opportunity to submit evidence, of a type listed in Rule 56(c)(1), supporting her response to Wandres' motion. Gill has failed to do so; Wandres' motion must be granted for this reason alone.

2. <u>Coverage</u>

Wandres is entitled to summary judgment on a second, independent ground: Gill has not produced evidence creating a genuine dispute of material fact as to whether Wandres is a covered entity under the ADA.

7

Gill bears the burden of establishing that Wandres is an employer for purposes of the ADA. *See Arbaugh v. Y&H Corp.*, 546 U.S. 500 (2006) (holding that employee-numerosity requirement of ADA is an element of Title VII plaintiff's claim and not a jurisdictional requirement). Gill does not dispute that Wandres has fewer than 15 employees. She maintains, however, that Wandres and its parent company, Wandres GmbH, should be considered a "single employer" for purposes of the ADA. *See Armbruster v. Quinn*, 711 F.2d 1332 (6th Cir. 1983), *abrogated on other grounds by Arbaugh*, 546 U.S. 500; *Swallows v. Barnes & Noble Book Stores, Inc.*, 128 F.3d 990, 993-94 (6th Cir. 1997) (recognizing applicability of "single employer" doctrine to ADA claims).

The Sixth Circuit has adopted the four-part test approved by the Supreme Court in *Radio Union v. Broadcast Service,* 380 U.S. 255 (1965) to determine whether two entities should be considered a single employer for purposes of the ADA. *Armbruster*, 711 F.2d at 1337. This test "assesses the degree of (1) interrelated operations, (2) common management, (3) centralized control of labor relations, and (4) common ownership. *Id.* The presence or absence of any particular factor is not determinative, although control over labor relations is a "central

8

concern." *Id.* The plaintiff must show that the two entities are "highly integrated with respect to ownership and operations." *Id.* at 1338 (citations omitted).

    a.    <u>Interrelated operations</u>

Courts in this circuit have determined whether the operations of two entities are interrelated based on the presence or absence of, for example, shared offices, record-keeping, bank accounts, or equipment; one entity's handling of the payroll and accounting of the other; or mandatory approval of one entity's purchases by the other. *See Sanford v. Main Street Baptist Church*, 449 F. App'x 488, 494 (6th Cir. 2011); *Swallows v. Barnes & Noble Book Stores, Inc.*, 128 F.3d 990, 994 (6th Cir. 1997); *Armbruster*, 711 F.2d at 1338.

The *Armbruster* court found interrelated operations where the parent company handled the subsidiary company's accounts receivable, payroll, and cash accounting; provided administrative backup; monitored the subsidiary's sales shipments; provided company credit cards to the subsidiary's managers; and housed the subsidiary's bank accounts at the parent's headquarters. 711 F.2d at 1338.

9

No such interrelatedness is present here. Gill admits that Wandres maintains separate bank accounts and payroll from Wandres GmbH. (Dkt. 19 at 1.) She does not dispute that Wandres also maintains separate corporate records from Wandres GmbH. (*See* Elsley Aff. ¶ 10.) The court in *Swallows* found an absence of interrelated operations based on similar facts. 128 F.3d at 994 (finding "insufficient evidence of interrelation of operations" where entities "each kept their own records, and maintained separate bank accounts and offices").

Gill argues for interrelated operations based on the fact that Wandres GmbH manufacturers and services the machines sold by Wandres. (Dkt. 19 at 1-2.) If this were sufficient evidence of interrelated operations, this factor would be met every time an entity sold products manufactured by another company. *See Swallows*, 128 F.3d at 994 (finding if bookstore's lease of space from university and direct relationship with faculty were sufficient to create a genuine factual dispute, "there would be a genuine issue as to the first factor every time a company contracted to run a campus bookstore"). Gill has not met this factor.

    b.    <u>Common management</u>

Wandres concedes that "there is some overlap in management / ownership of Wandres Corporation [and] Wandres GmbH." (Dkt. 17, Def.'s Br. 4.) Gill claims that Claus Wandres owns both Wandres and Wandres GmbH, and that Thomas Spehr is Managing Director of both companies. (Dkt. 24 at 6.) This may be the "overlap" to which Wandres refers. According to Gill, Claus Wandres and Spehr "periodically" come to Wandres to look over operations and provide lists of changes to be implemented. (Dkt. 19 at 2.) Some common management is not necessarily enough, however, to meet this factor. *Sanford*, 449 F. App'x at 495 (citing *E.E.O.C. v. Wooster Brush Co. Emps.' Relief Ass'n*, 727 F.2d 566, 572 (6th Cir. 1984) (finding common management factor not met, even though president and CEO of one entity served on second entity's board of directors)).

    c.    <u>Centralized control of labor relations</u>

Wandres submitted evidence, in the form of the affidavit of its vice-president, Justin Elsley, that Elsley has complete authority with respect to employment matters at Wandres, and that Wandres GmbH does not exercise day-to-day control over employment decisions. (Elsley Aff. ¶¶ 9, 11.) Elsley states that he makes all hiring and termination

11

decisions for Wandres. (*Id.* ¶ 2.) Elsley further states that he was not required to, and did not, consult with Wandres GmbH with respect to any employment decisions he made about Gill. (*Id.* ¶ 12.)

In response, Gill concedes that Elsley "did / does have the authority to hire employees and to make other financial decision [*sic*] in regard to the everyday business at Wandres Corporation." (Dkt. 19 at 2.) She nonetheless asserts that "in 2010 things shifted." (*Id.*) Specifically, Gill states that (1) in 2011, Claus Wandres and Thomas Spehr came to interview candidates for a sales position at Wandres; (2) in 2010, Wandres GmbH took actions to replace Elsley as Vice President and manager of Wandres, but ultimately did not replace him; (3) in 2010, Elsley told Gill that Wandres GmbH would make decisions on performance bonuses; and (4) many employees from Wandres GmbH have come to train Wandres employees. (Dkt. 19 at 3; Dkt. 24 at 5.)

Isolated incidents such as those in Gill's first three assertions do not suggest Wandres GmbH had centralized control of Wandres' labor decisions. Rather, they suggest that, at most, Wandres GmbH "had a voice in certain employment decisions . . . not that it controlled those decisions in the manner seen in single employer situations." *Swallows*,

12

128 F.3d at 995. And training provided by Wandres GmbH does not push the relationship over the line into one of centralized control. The "critical question" is, "What entity made the final decisions regarding employment matters related to the person claiming discrimination?" *Id.* at 995 (quoting *Frank v. U.S. West, Inc.*, 3 F.3d 1357, 1363 (10th Cir. 1993). Here, Gill has presented no evidence that Wandres GmbH hired her or otherwise made decisions regarding her employment. In fact, Gill's in Gill's own account, Elsley made decisions regarding Gill's day-to-day job duties. (*See* Dkt. 19 at 4-6.)

        d.     Common ownership

Wandres does not dispute that Claus Wandres owns both Wandres and Wandres GmbH. But the Sixth Circuit has interpreted this factor "as an inquiry into the legitimacy of the entities." *Wooster Brush*, 727 F.2d at 572-73. That is, "[i]f neither of the entities is a sham then the fourth test is not met." *Id.* at 573; *accord Sanford*, 449 F. App'x at 495; *Swallows*, 128 F.3d at 995. Gill has made no factual assertion that either Wandres or Wandres GmbH is a sham entity. She thus has not met this factor.

In sum, Gill has, at best, alleged the existence of a factual dispute as to the presence of common management between Wandres and Wandres GmbH. Even if Gill's statements could properly be considered under Rule 56, they would be insufficient to show a genuine dispute of material fact as to Wandres' coverage under the ADA.

### 3. Conclusion

Wandres is entitled to summary judgment on two independent grounds: Gill's failure to submit evidence comporting with Fed. R. Civ. P. 56, and Gill's failure to create a factual dispute as to whether Wandres is an employer under the ADA.

## III. Conclusion

Accordingly, Wandres' Motion for Summary Judgment (Dkt. 17) is GRANTED; and

Gill's Complaint (Dkt. 1) is DISMISSED with prejudice. This is a final order and closes the case.

IT IS SO ORDERED.

Dated: March 6, 2015　　　　　　　/s/Judith E. Levy
Ann Arbor, Michigan　　　　　　　JUDITH E. LEVY
　　　　　　　　　　　　　　　　United States District Judge

**CERTIFICATE OF SERVICE**

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on March 6, 2015.

/s/Felicia M. Moses
FELICIA M. MOSES
Case Manager